**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RODNEY KEITH HAZLIP, | § | |
| TDCJ #1794439, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-0607 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

Rodney Keith Hazlip is serving a 40-year prison sentence in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ) imposed after his conviction for felony driving while intoxicated. (Montgomery County, Texas, Cause Number 10-04-04149-CR). Hazlip has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 and a brief in support, seeking relief from that conviction and sentence. (Docket Entry Nos. 1, 9). The respondent has moved for summary judgment, arguing that Hazlip is not entitled to relief because two of the claims are procedurally barred and the remaining claims lack merit. (Docket Entry No. 21). Hazlip has filed a reply. (Docket Entry No. 24).

Based on the pleadings, the motion and reply, the state-court records, and the applicable law, the court grants the respondent's motion, denies Hazlip's petition, and enters final judgment by separate order. The reasons for these rulings are set out below.

## I. Background and Procedural History

### A. Hazlip's State Court Proceedings

A Montgomery County grand jury indicted Hazlip in Cause Number 10-04-04149-CR, charging him with his third DWI. This is a felony under Texas Penal Code § 49.04.[1] The indictment alleged that on April 19, 2010, Hazlip operated a motor vehicle in a public place while intoxicated, and that he had two prior DWI convictions.[2] The indictment included enhancement allegations that Hazlip's two prior felony convictions made him a habitual offender,[3] and that the vehicle Hazlip used to commit the offense was a deadly weapon.[4]

Two months before trial, a clinical psychologist, Dr. Walter Quijano, evaluated Hazlip at his attorney's request to determine whether he was competent to assist in his own defense.[5] Hazlip had been diagnosed with bipolar disorder with psychotic features, which he treated with prescription drugs and self-medicated with alcohol and marijuana.[6] Dr. Quijano concluded that Hazlip was competent to proceed.[7] Defense counsel raised the issue of Hazlip's competency again before jury selection. The trial court denied counsel's request for a formal competency proceeding after

---

[1]     Indictment, Docket Entry No. 19-2, at 31-32. For purposes of identification all page citations refer to the page number imprinted by the court's electronic filing system, CM/ECF.

[2]     *Id.*

[3]     *Id.* The indictment actually lists three prior felony offenses in paragraphs A, B, and C, but the state abandoned paragraph B during the punishment phase of the proceeding. *See* Court Reporter's Record, vol. 5, at 82-84.

[4]     Indictment, Docket Entry No. 19-2, at 31.

[5]     Psychological Forensic Evaluation, Docket Entry No. 19-3, at 8-16.

[6]     *Id.* at 10.

[7]     *Id.* at 16.

considering Dr. Quijano's report, Hazlip's demeanor in response to questioning, and information from the Montgomery County Jail about Hazlip's medication regimen.[8]

During trial, the State presented evidence that law enforcement received several 911 calls on the night of April 19, 2010. These calls reported that a red and white Chevy Blazer was being driven in a reckless manner. The driver ran a red light and almost collided with other vehicles.[9] An eyewitness, Gustavo Olvera, testified that he was out walking with his four-year-old daughter and had to move out of the path of a red and white Chevy Blazer that was careening through his neighborhood at a high rate of speed.[10] Moments later, the Blazer crashed into some bushes on Olvera's property and lodged in a ditch.[11] The driver, later determined to be Hazlip, got out of the Blazer and began walking towards Olvera's house.[12] Olvera used his cellphone to call his wife and told her to lock the doors because he thought that Hazlip was intoxicated.[13] Hazlip asked Olvera to help him get his Blazer out of the ditch.[14] When Olvera refused, Hazlip threatened to kill him. Olvera called 911.[15]

Trooper Michael Martin of the Texas Department of Public Safety responded to the call. At the scene, he arrested Hazlip for DWI based on the alcohol on his breath and other signs of

---

[8]        Court Reporter's Record, vol. 2, Docket Entry No. 19-5, at 11-26.

[9]        Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 30.

[10]      *Id.* at 159-61, 170.

[11]      *Id.* at 162.

[12]      *Id.* at 167-68.

[13]      *Id.* at 162-64.

[14]      *Id.* at 164.

[15]      *Id.* at 164-65.

intoxication.[16]  When Trooper Martin learned that Hazlip had at least two previous DWI convictions, he took Hazlip to a local hospital for a blood draw, as state law required.[17]  A forensic scientist, Camille Stafford, testified that Hazlip's blood-alcohol level was 0.26, over three times the Texas legal limit of 0.08.[18]  His blood was drawn more than four hours after he crashed his vehicle.[19] Stafford used retrograde extrapolation to estimate that Hazlip's blood-alcohol content had been from 0.06 to 0.10 higher when he was driving.[20]  The State presented evidence that Hazlip had two previous convictions for DWI at the time of the charged offense.[21]  The jury found Hazlip guilty of felony DWI and found in the affirmative that Hazlip had used a deadly weapon — his vehicle — in committing the offense.[22]

During the punishment proceeding, the State presented additional evidence showing that Hazlip's criminal record included four prior DWI convictions, two other previous felony convictions, and a pending assault charge for an altercation with his girlfriend's elderly stepfather.[23] The defense presented testimony from Dr. Quijano by way of mitigation.  He examined Hazlip and determined that he had  a chronic mental illness, bipolar disorder, that was "in partial remission"

---

[16]     *Id.* at 68.

[17]     *Id.* at 82-84.

[18]     *Id.* at 142.

[19]     *Id.* at 128, 145-47 (noting that the crash occurred at 7:56 p.m, and that blood was drawn at 12:25 a.m.).

[20]     *Id.* at 151-52.

[21]     *Id.* at 183-97.

[22]     Court Reporter's Record, vol. 4, Docket Entry No. 19-7, at 39, 40.

[23]     Court Reporter's Record, vol. 5, Docket Entry No. 19-8, at 14-15, 17-24, 31-40, 76-78.

when he was taking his medication.[24]  A mental health case-worker and Hazlip's girlfriend also testified about his mental health and his need for medication.[25]

Hazlip faced a potential sentence of 25 years to life imprisonment.[26]  After finding two of the enhancement allegations in the indictment to be true, the jury sentenced Hazlip to a 40-year term of imprisonment.[27]

On direct appeal, Hazlip argued that the trial court erred by:  (1) denying his request for a formal competency hearing or raising the issue of competency during the trial; (2) admitting the retrograde-extrapolation evidence from the State's expert without an adequate factual basis for her opinion; and (3) failing to instruct the jury during the punishment phase that "prior bad acts" could be considered only if proven beyond a reasonable doubt.[28]  The Texas intermediate court of appeals affirmed the conviction in an unpublished opinion, *Hazlip v. State*, No. 10-04-04149-CR, 2012 WL 4466352 (Tex. App. — Beaumont Sept. 26, 2012).  The Texas Court of Criminal Appeals refused Hazlip's petition for discretionary review and the United States Supreme Court denied his certiorari petition.  *See Hazlip v. Texas*, 134 S. Ct. 2704 (2014).  The Texas Court of Criminal Appeals denied Hazlip's application for a state writ of habeas corpus under Article 11.07 of the Texas Code of

---

[24]     *Id.* at 48-49.

[25]     *Id.* at 65-75.

[26]     *See* Tex. Penal Code § 12.42(d) (providing that, subject to certain exceptions, "if it is shown on the trial of a felony offense . . . that the defendant has previously been finally convicted of two felony offenses . . . on conviction the defendant shall be punished by imprisonment in [TDCJ] for life, or for any term of not more than 99 years or less than 25 years").

[27]     Court Reporter's Record, vol. 6, Docket Entry No. 19-9, at 4-5.

[28]     Appellant's Brief, Docket Entry No. 19-11, at 3, 11-12

Criminal Procedure, without a written order, based on findings of fact and conclusions of law entered by the trial court.[29]  This federal petition followed.

**B.**      **Hazlip's Federal Habeas Petition**

Hazlip raises an assortment of allegations and claims for relief under 28 U.S.C. § 2254. The respondent has organized the claims as follows:

1.      The trial court erred and violated Hazlip's rights because —

    a.      he was illegally sentenced as a felony DWI offender when the State could not link him to his prior DWI convictions;

    b.      the trial court committed a *Pate* violation when it failed to hold a competency hearing;

    c.      the trial judge was biased against him; and

    d.      it allowed retrograde-extrapolation evidence to be admitted in error.

2.      The prosecutor made an improper remark during closing argument by injecting facts not in evidence.

3.      Hazlip's trial counsel was ineffective because she failed to —

    a.      investigate and proffer an insanity defense;

    b.      properly challenge his competency or object to the trial court's finding of competency;

    c.      object to the admission of a 911 call;

    d.      impeach eyewitness Gustavo Olvera with a prior inconsistent statement;

---

[29]      Action Taken on Writ No. 84,378-01, Docket Entry No. 20-12, at 1.

e.  object to the jury charge for failing to include an application paragraph for the deadly weapon instruction;

f.  object to the trial judge's numerous errors;

g.  object to the trial court's bias;

h.  object to a violation of "the Rule";

i.  interview witnesses or have a firm command of the law; and

j.  properly litigate the suppression of custodial statements made in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), evidence seized as the result of an illegal arrest, or the blood alcohol test results.

4.  There was no evidence to support the jury's deadly weapon finding.

5.  Hazlip's appellate counsel was ineffective for failing to raise or adequately brief the following issues —

a.  the illegal sentence;

b.  the prosecutor's improper closing argument;

c.  the sufficiency of the evidence to support the deadly weapon finding;

d.  the admission the retrograde-extrapolation evidence; and

e.  the lack of an adequate jury instruction on prior bad acts at punishment.

6.  Hazlip was denied a fundamentally fair trial by the cumulative effect of the errors committed by the trial court, the prosecutor, and his defense counsel.[30]

---

[30]  *See* Respondent's Motion for Summary Judgment, Docket Entry No. 21, at 1-3. The list of claims is consistent with the issues raised in the petition and supporting brief. *See* Petition, Docket Entry No. 1, at 8-20; Brief in Support, Docket Entry No. 9, at 11-85. Hazlip has filed a lengthy response to the motion for summary judgment and, although he disagrees with the respondent's analysis, he does not object to the categorization of his claims. *See* Petitioner's Traverse, Docket Entry No. 24, at 3-184. Because Hazlip does not object, the court adopts the respondent's categorization with minor modifications for ease of analysis.

The state court records show that all but one of these claims (Claim 5d) were raised and rejected on the merits, either on direct appeal or collateral review.

The respondent moves for summary judgment, arguing that two of the claims (Claim 4 and Claim 5d) are procedurally barred and the remaining claims lack merit. Each claim is addressed below under the applicable legal standards.

## II.    The Legal Standards

### A.    Exhaustion of State Court Remedies is Required

A federal court may not grant habeas relief on a claim unless the petitioner has first exhausted state remedies for that claim. *See* 28 U.S.C. § 2254(b). Exhaustion requires a petitioner to first present his claims to the highest state court having criminal jurisdiction, in a procedurally proper manner, so that the state court has a fair opportunity to consider challenges to the conviction before those issues come to federal court for habeas corpus review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). In Texas, habeas petitioners "must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings." *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004). The exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition that were not properly presented or considered on state-court review. *Moore v. Quarterman*, 454 F.3d 484, 491 (5th Cir. 2006).

The respondent argues that Hazlip did not present Claim 5d (ineffective assistance of appellate counsel based on the retrograde-extrapolation evidence) in state court. In his response to the summary judgment motion, and in his other pleadings, Hazlip attempts to assert other claims that were not presented in a way that allowed the state court to consider them on the merits. Those

claims include Hazlip's assertion of cumulative error due to "myriad" rulings or comments by the trial court and his trial attorney's failure to object to each ruling or comment.[31] Many of those rulings and comments are mentioned only briefly, with a record cite but with no supporting facts.[32] The state-court record confirms that Hazlip did not raise these grounds for relief in his state habeas corpus application.[33] Claims not articulated in the state habeas application, or raised, if at all, in a supporting memorandum, were not properly presented to the Texas Court of Criminal Appeals. That court requires compliance with Texas Rule of Appellate Procedure 73.1, which specifies how to raise grounds for relief. *See Ex parte Walton*, 422 S.W.3d 720, 721 (Tex. Crim. App. 2014) (the Texas Court of Criminal Appeals "will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form" required by TRAP 73.1) (emphasis in original). By failing to present his claims in a procedurally proper manner, Hazlip failed to exhaust these claims. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (raising a claim "in a procedural context in which the merits of that claim will not be considered" is not "fair presentation" needed for exhaustion under the habeas statutes).

Recognizing that he has not adequately exhausted state court remedies for some of his claims of trial-court error and ineffective assistance, Hazlip appears to argue that exhaustion should be excused. He argues that he could not present all of his claims because of the 50-page limit imposed

---

[31]     Petitioner's Traverse, Docket Entry No. 24, at 23-40; Docket Entry No. 24-1, at 1-12.

[32]     Petition, Docket Entry No. 1, at 14-15.

[33]     Application for a Writ of Habeas Corpus Under Article 11.07 of the Texas Code of Criminal Procedure, Docket Entry No. 20-20, at 7-28.

on a memorandum accompanying a state habeas corpus petition.[34] *See* Tex. R. App. P. 73.1(d). A page limit does not excuse exhaustion or other procedural default, especially when there is no request for leave to exceed the limit. *See Weeks v. Angelone*, 176 F.3d 249, 271 (4th Cir.1999) (a state court's 50-page limit on briefs "merely limited the manner in which [the petitioner] could present his arguments; it did not wholly prevent him from presenting them"); *see also Trujillo v. Ploughe*, 475 F. App'x 261, 266-67 (10th Cir. 2012) (Colorado's 30-page limit on appellate briefs was not "cause" for a habeas petitioner's procedural default of a claim that he merely listed in his brief without citing facts, argument, or authority); *Orbe v. True*, 233 F. Supp. 2d 749, 760-64 (E.D. Va. 2002) (a 50-page limit on state habeas petitions did not excuse a petitioner from fairly presenting his claims for purposes of exhaustion); *Jones v. Stephens*, Civil No. 3:14-cv-3134, 2015 WL 5052296, at *3 (N.D. Tex. July 15, 2015) (the 50-page limit under TRAP 73.1(d) does not excuse the exhaustion requirement).

Hazlip does not allege, and the record does not reflect, that he asked for leave to file a brief longer than 50 pages. Under these circumstances, the page limit does not excuse his obligation to fairly present his claims in state court for purposes of the exhaustion requirement. *See Hill v. Norris*, 96 F.3d 1085, 1087-88 (8th Cir. 1996) (an inmate who failed to submit a motion to file an "overlength petition" may not assert the page limit as an excuse for his failure to exhaust). Hazlip does not otherwise show that the 50-page limit set by the Texas Court of Criminal Appeals was unreasonable. The reason for his failure to exhaust was not the page limit, but rather his strategic choices of the claims to focus on. *See Mueller v. Angelone*, 181 F.3d 557, 585 (4th Cir. 1999) (the

---

[34]     Petitioner's Traverse, Docket Entry No. 24, at 23-24; Petition, Docket Entry No. 1, at 15.

petitioner sought to raise some 77 claims, 55 of them only by reference in two concluding footnotes).

The federal habeas court limits its analysis to claims that Hazlip fairly presented for adjudication on the merits during his direct appeal or in his state habeas corpus application, as reflected in the state court's findings of fact and conclusions of law.[35]

### B.     Claims Adjudicated on the Merits are Entitled to Substantial Deference

To the extent that Hazlip's claims were adjudicated on the merits in state court, the legal standard in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d), applies. A federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Clearly established federal law in this context consists of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). When a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2).

This statutory framework "imposes a 'highly deferential standard for evaluating state-court rulings, . . . [which] 'demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). "A state court's decision is deemed contrary to clearly established federal law" for purposes of § 2254(d)(1) only if it (1) "reaches a legal

---

[35]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 81-87.

conclusion in direct conflict with a prior decision of the Supreme Court"; (2) "reaches a different conclusion than the Supreme Court on materially indistinguishable facts"; or (3) "applies a rule different from the governing law set forth in [Supreme Court precedent]." *Boyer v. Vannoy*, 863 F.3d 428, 441 (5th Cir. 2017) (citations omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quotation omitted); *accord Young v. Davis*, 860 F.3d 318, 324 (5th Cir. 2017).

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. *See Garcia v. Quarterman*, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). A federal habeas corpus court

may not characterize state-court factual determinations as "unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." *Id*.

### C.     The Motion for Summary Judgment

The respondent's motion for summary judgment is filed under Rule 56 of the Federal Rules of Civil Procedure. This rule states that a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U .S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id*.

In deciding a summary judgment motion, the reviewing court ordinarily must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation and internal quotation marks omitted). A federal habeas court applies general summary judgment standards only to the extent they do not conflict with the AEDPA. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) ("[Rule 56] applies only to the extent that it does not conflict with the habeas rules."), abrogated on other grounds by *Tennard v. Dretke*, 542 U.S. 274 (2004). The presumption of correctness in 28 U.S.C. § 2254(e)(1) overrides the ordinary summary judgment rule that disputed facts must be construed in the light most favorable to the nonmoving party. *See Smith*, 311 F.3d at 668.

Hazlip represents himself. "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction," meaning that his submissions "are not held to the same stringent and rigorous standards as are pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (internal citation marks and quotation omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' . . . and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"). Although self-represented litigant's pleadings are entitled to liberal construction, they are still required to explain or identify specific facts in support of their claims. *See, e.g, United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) (citing *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)); *Bookman v. Shubzda*, 945 F. Supp. 999, 1004-05 (N.D. Tex. 1996) (a *pro se* litigant has an obligation to support his claims). It is not the court's duty to sift through the record for evidence that supports a litigant's contentions. *See Green v. Johnson*, 160 F.3d 1029, 1036 n.2 (5th Cir.1998) (it is not the court's job "to go on a fishing expedition through the record to find facts favoring or disfavoring [a habeas petitioner's] arguments"). Nor does the court have an obligation to fashion new or better arguments on the litigant's behalf. *See Jones v. Alfred*, 353 F. App'x 949, 952 (5th Cir. 2009) ("[O]ur responsibility to construe *pro se* filings liberally . . . does not mean that we will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing.") (internal citation and quotation marks omitted).

The grounds for relief Hazlip asserts, and the arguments for summary dismissal, are analyzed below.

## III.     The Claims of Trial Court Error (Claim 1)

In Claims 1a, 1b, 1c, and 1d, Hazlip contends that the trial court abused its discretion during his state criminal proceeding and violated his right to due process. These claims were rejected in state court. The respondent argues that Hazlip is not entitled to relief because he neither establishes constitutional error nor shows that he was prejudiced.

"[A] state defendant has no constitutional right to an errorless trial." *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984) (citing *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983)). A federal habeas corpus court may grant relief "only when the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Bailey*, 744 F.2d at 1168 (citing *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983)). The harmless-error standard set out in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), applies on federal habeas corpus review. *See Fry v. Pliler*, 551 U.S. 112, 121 (2007). Under this standard, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Davis v. Ayala*, — U.S. —, 135 S. Ct. 2187, 2197 (2015). Relief is proper only if the reviewing court has "grave doubt about whether a trial error . . . had 'substantial and injurious effect or influence in determining the jury's verdict.'" *Davis*, 135 S. Ct. at 2198. None of Hazlip's claims of trial court error warrant relief under this standard.

## A.    The Claim of an Illegal Sentence (Claim 1a)

Hazlip's primary claim is that the trial court erred by sentencing him as a felon for a misdemeanor offense.[36] Hazlip argues that his sentence is "illegal," and an abuse of discretion,

---

[36]    Petition, Docket Entry No. 1, at 8; Brief in Support, Docket Entry No. 9, at 11-13.

because the State failed to link him to the prior DWI convictions used to enhance his DWI to a felony.[37]

DWI typically is a misdemeanor offense under Texas law. *See* Tex. Penal Code § 49.04. The offense is a third-degree felony, however, when two prior DWI convictions are alleged as jurisdictional elements. *See* Tex. Penal Code § 49.09(b)(2); *see also State v. Mewbourn*, 993 S.W.2d 771, 772 (Tex. App. — Tyler 1999, no pet.) (prior DWI convictions are allegations of jurisdiction or elements of a felony DWI offense under § 49.09(b)). To establish that a defendant has a prior DWI conviction for purposes of the enhancement, "the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007).

The Texas state habeas corpus court, which also presided over Hazlip's trial, considered this claim and found that "the evidence was sufficient to link [Hazlip] to his two prior DWI convictions for purposes of jurisdictional enhancement."[38] The record supports this finding. The State presented certified copies of judgments showing that Hazlip had two prior Texas convictions for DWI.[39] Although the judgments did not include legible fingerprints confirming Hazlip's identity as the defendant in those cases, the State submitted additional evidence in the form of driver's license records from the Texas Department of Public Safety.[40] Those records confirmed that Hazlip had two prior DWI convictions and sufficiently identified him by date of birth, driver's license number, and

---

[37]     *Id.*

[38]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 85 (citing *Flowers v. State*, 220 S.W.3d 919 (Tex. Crim. App. 2007); *Gentile v. State*, S.W.2d 359 (Tex. App. — Austin 1993, no pet.).

[39]     Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 183-86.

[40]     *Id.* at 186-197.

16

state identification number as the same Rodney Keith Hazlip who committed both of those offenses.[41] This satisfied the jurisdictional enhancement requirement, elevating Hazlip's offense to a felony. *See Flowers*, 220 S.W.3d at 921-25 (other documents may be used to prove a prior DWI conviction, including a defendant's driver's license record from the Texas Department of Public Safety; there is no "best evidence" rule for satisfying this element).

The respondent correctly notes that whether Hazlip's sentence was properly enhanced turns on the state court's interpretation of its own laws. That does not raise a federal constitutional claim and is not subject to federal habeas corpus review.[42] *See Kemph v. Estelle*, 621 F.2d 162, 163 (5th Cir. 1980) (per curiam); *see also Rubino v. Lynaugh*, 845 F.2d 1266, 1271 (5th Cir. 1988) ("[T]he determination of what prior crimes should count for enhancement purposes under Texas law was solely for the State and not cognizable in federal habeas corpus."); *Rubio v. Estelle*, 689 F.2d 533, 536 (5th Cir. 1982) (a habeas petitioner's claim that her conviction was not a felony under state law is "not cognizable" in a federal habeas proceeding). The Supreme Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "A state prisoner seeking federal review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right." *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law. *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

---

[41]    *Id.*

[42]    Respondent's Motion, Docket Entry No. 21, at 19-22.

Hazlip does not establish that his sentence was improperly enhanced for purposes of the felony DWI statute or that a constitutional violation occurred when the trial court sentenced him as a felon based on the evidence showing that he had at least two prior DWI convictions. Hazlip does not have a valid claim for federal habeas review of the enhanced sentence he received. He does not show that the state court's decision to reject his improper-enhancement claim was an unreasonable determination of the facts or application of the law. The respondent's motion for summary judgment dismissing this claim is granted.

## B.     The Claim That Failing to Hold a Competency Hearing was Error (Claim 1b)

Hazlip contends that the trial court erred by denying his defense counsel's request for a competency hearing, in violation of *Pate v. Robinson*, 383 U.S. 375 (1966).[43] In that case, the Supreme Court held that a trial court must hold a hearing where the evidence "raises a 'bona fide doubt' as to [the] defendant's competence to stand trial[.]" *Pate,* 383 U.S. at 385. A defendant is incompetent to stand trial if he does not have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994).

The intermediate court of appeals discussed the failure to convene a formal competency hearing at length and concluded that the trial court did not abuse its discretion. The state court explained:

> . . . Hazlip argues the trial court should have conducted a competency hearing when, just before voir dire, he advised the trial court that he had not gotten his medications and that he was confused.

---

[43]     Petition, Docket Entry No. 1, at 11-12, 18-19.

We review a trial court's failure to conduct a competency trial under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999); *Garcia v. State*, 595 S.W.2d 538, 542 (Tex. Crim. App. [Panel Op.] 1980); *Salahud-din v. State*, 206 S.W.3d 203, 207 (Tex. App. — Corpus Christi 2006, pet. ref'd). A reviewing court gives a trial court's assessment of a defendant's mental competency great deference. *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003). Therefore, we will not substitute our judgment for that of the trial court; rather, we will determine whether the trial court's decision is arbitrary or unreasonable. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009) (noting that the trial court is "in a better position to determine whether [the defendant] was presently competent"). We apply the same standard whether the issue of competency is presented pre-trial or during trial. *Moore*, 999 S.W.2d at 393.

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." Tex. Code Crim. Proc. Ann. art. 46B.003(b) (West 2006). A defendant is incompetent to stand trial if he does not have:

- sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or

- a rational as well as factual understanding of the proceedings against him.

*Id.* art. 46B.003(a). If a party suggests that a defendant is incompetent to stand trial, the trial court "shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c) (West Supp. 2012).[] Bona fide doubt is the proper standard for determining whether a trial court should conduct an informal inquiry. *Montoya*, 291 S.W.3d at 425. Evidence capable of creating a bona fide doubt about a defendant's competency may come from the trial court's own observations, known facts, evidence presented, affidavits, motions, or any other claim or reliable source. *LaHood v. State*, 171 S.W.3d 613, 618 (Tex. App. — Houston [14th Dist.] 2005, pet. ref'd) (citing *Brown v. State*, 129 S.W.3d 762, 765 (Tex. App. — Houston [1st Dist.] 2004, no pet.)). If the defendant exhibits truly bizarre behavior, has a recent history of severe mental illness, or at least moderate mental retardation, a bona fide doubt may exist. *Montoya*, 291 S.W.3d at 425.

In Hazlip's case, both parties acknowledge that a psychologist found Hazlip competent for trial approximately two months before the trial began,[] and the trial judge could properly presume that Hazlip was competent on the morning the trial began. *See id.* When Hazlip claimed he had not received his prescription medications, the trial court questioned Hazlip. However, the trial court was not required to believe Hazlip's claim that he had not been given his medications. The

record reflects that prior to voir dire, Hazlip answered questions in the trial court's presence, explaining that the role of the jurors, the judge, and the prosecutor was to "figure out what is going on." Importantly, Hazlip presented no experts to show that he was incompetent, and no witnesses except for Hazlip testified that he had not received his medications on the morning of trial. *Compare Clark v. State*, 47 S.W.3d 211, 218 (Tex. App. — Beaumont 2001, no pet.) ("To be entitled to a second competency trial before a jury, there must be new evidence indicating a change in mental condition from the previous finding."), *with Garcia v. State*, 595 S.W.2d 538, 542 (Tex. Crim. App. 1980) (concluding that the trial court erred in failing to conduct a competency trial where the testimony of four witnesses would support a finding of incompetency); *and Thornhill v. State*, 910 S.W.2d 653, 654–55 (Tex. App. — Fort Worth 1995, pet. ref'd) (trial court erred in failing to conduct second competency hearing to allow the defendant to present additional evidence not available at the first hearing).

In the absence of express findings, we [infer] that the trial court, based on Hazlip's responses in court, reasonably concluded that Hazlip had not been truthful when he claimed to be confused. Based on the information before it, the trial court could reasonably conclude that Hazlip's assertion of incompetence was goal oriented, as he indicated a desire that the trial court appoint another attorney to represent him. We conclude that the trial court did not abuse its discretion by deciding that Hazlip's evidence insufficient to overcome the presumption that he remained competent for trial. *See McDaniel*, 98 S.W.3d at 713 (stating that a reviewing court gives a trial court's assessment of a defendant's mental competency great deference).

*Hazlip*, 2012 WL 4466352, at *1-3 (footnotes omitted). Hazlip repeated this claim on collateral review, where the trial court confirmed that there was "no bona fide doubt" about Hazlip's competency and found that he was "competent to stand trial."[44]

A petitioner seeking habeas relief based on the trial court's failure to hold a competency hearing has the burden of showing that "objective facts known to the trial court were sufficient to raise a bona fide doubt as to his competency." *Enriquez v. Procunier*, 752 F.2d 111, 113 (5th Cir. 1984). The petitioner's burden to prove that he was incompetent is a "heavy" one. *See DeVille*, 21 F.3d at 656. A habeas petitioner must show that there are "sufficient facts to positively,

---

[44]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 83, 85.

unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during trial." *Moody v. Johnson*, 139 F.3d 477, 481 (5th Cir. 1998) (internal quotation marks and citation omitted).

At the close of voir dire, Hazlip's defense counsel advised the trial court that he did not help during jury selection.[45] This did not require a formal competency hearing. When asked on state habeas corpus review whether she thought that Hazlip was incompetent, defense counsel clarified that she believed he was competent to stand trial because, based on her observations, "he appeared to have a rational and factual understanding of the proceedings."[46] The state habeas corpus court found that counsel's affidavit was credible.[47] Credibility findings are entitled to substantial deference on federal habeas review and are presumed correct under 28 U.S.C. § 2254(e)(1) absent clear and convincing evidence to the contrary. *See Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006) (citing *Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir. 2005)); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001).

Hazlip disputes whether counsel or the trial court correctly determined that he was competent,[48] but he has presented no evidence to contradict the state court's credibility determination and he has not rebutted the state court's finding that he was competent to stand trial.

---

[45]    Court Reporter's Record, vol. 2, Docket Entry No. 19-5, at 111.

[46]    Affidavit of Andrea Sadler, Docket Entry No. 20-22, at 7.

[47]    Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 82.

[48]    As support for his claim that he was incompetent, Hazlip relies on the district court's decision in *LaHood v. Stephens*, Civil No. 4:13-1874, 2015 WL 925884 (S.D. Tex. March 3, 2015), which granted habeas relief after finding that the state trial court violated *Pate* by not holding a competency hearing. *See* Brief in Support, Docket Entry No. 9, at 73; Petitioner's Traverse, Docket Entry No. 24, at 21; Docket Entry No. 24-1, at 33. However, the district court's decision in that case was reversed by the Fifth Circuit. *See LaHood v. Davis*, 653 F. App'x 253 (5th Cir. June 21, 2016), *cert. denied*, 137 S. Ct. 1079 (2017). Accordingly, Hazlip's reliance on the district court's decision in *LaHood* is misplaced.

The finding that Hazlip was competent is presumed correct under § 2254(e)(1). *See Colburn v. Cockrell*, 37 F. App'x 90, 2002 WL 1021891, *4 (5th Cir. 2002); *Carter v. Johnson*, 131 F.3d 452, 461 (5th Cir. 1997) (citing *Holmes v. King*, 709 F.2d 965, 968 (5th Cir. 1983)); *Barnard v. Collins*, 13 F.3d 871, 876 (5th Cir. 1994) (citing *Garrett v. Collins*, 951 F.2d 57, 59 (5th Cir. 1992)). "The presumption [of correctness] is especially strong when the state habeas court and the trial court are one in the same." *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (quoting *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000)); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996) ("The presumption is particularly strong where, as here, the habeas court was the same court that presided over the trial."). The record supports the presumption. Because Hazlip does not show that the state court's decision to reject this claim was unreasonable under the facts or contrary to the clearly established law established by *Pate*, he is not entitled to relief on this issue. The respondent's motion for summary judgment dismissing this claim is granted.

## C.    The Claim of Trial-Court Bias (Claim 1c)

Hazlip contends that the trial judge displayed bias against him during voir dire by imposing "an unreasonable 30 minute time restraint" on defense counsel's questioning and by instructing the panel of prospective jurors that police officers were "more credible."[49]

The Fourteenth Amendment Due Process Clause requires a "fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (citations and internal quotation marks omitted); *see also Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) ("Stated succinctly, the cornerstone of the American judicial system is the right to a fair and impartial process."). Actual bias must be

---

[49]      Brief in Support, Docket Entry No. 9, at 60, 61.

personal, *see Bracy*, 520 U.S. at 909, and must stem from an "extrajudicial source." *Liteky v. United States*, 510 U.S. 540, 544 (1994) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). By contrast, judicial rulings and intemperate remarks, even those that criticize or disapprove of, or are hostile to, counsel and the parties, almost never constitute actual bias unless they display such a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

The state habeas corpus court rejected Hazlip's claims of improper bias after finding that both sides were allotted equal time for voir dire and that the judge did not bolster the credibility of police officers.[50] The record shows that the trial court gave each side 30 minutes for voir dire,[51] and gave defense counsel additional time when asked.[52] There is no evidence that the trial court instructed the panel of prospective jurors that police officers were more credible than lay witnesses, as Hazlip claims. To the contrary, the trial court told the prospective jurors that "just because a person is a police officer doesn't mean they are always truthful."[53]

Hazlip does not demonstrate that any of the trial court's comments were improper. This court's own review of the trial transcript does not disclose any deep-seated animus against the defense or evidence of bias.[54] Because Hazlip does not show otherwise, he fails to demonstrate that

---

[50] Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 85.

[51] Court Reporter's Record, vol. 2, Docket Entry No. 19-5, at 36-37.

[52] *Id.* at 69.

[53] *Id.* at 94.

[54] To the extent that Hazlip takes issue with numerous other comments and rulings made by the trial court in his response to the summary judgment motion, those allegations were not properly raised in state court and are unexhausted for reasons set forth above. *See* Petitioner's Traverse, Docket Entry No. 24, at 23-40; Docket Entry No. 24-1, at 1-12. Even if these allegations were exhausted, however, they would still fail

(continued...)

the state court's decision to reject his claim was unreasonable. He is not entitled to relief on this issue. The respondent's motion for summary judgment dismissing this claim is granted.

### D. The Claim of Error in Admitting Retrograde-Extrapolation Evidence (Claim 1d)

Forensic scientist Camille Stafford testified for the State that Hazlip had a blood-alcohol level of 0.26, three times the legal limit, when his blood sample was drawn four hours after he crashed his vehicle on Gustavo Olvera's property.[55] Over defense counsel's objection, Stafford testified further that, using retrograde extrapolation, Hazlip's actual blood alcohol level could have been between .06 and .10 higher when he was driving.[56] Hazlip contends that the trial court erred when it admitted the retrograde-extrapolation evidence and that he was prejudiced as a result.[57]

On direct appeal, the intermediate appellate court agreed that the trial court erred in admitting the retrograde-extrapolation evidence over Hazlip's objection. *Hazlip*, 2012 WL 4466352, at *4 (the State failed to sufficiently demonstrate that the estimate was "reasonably accurate" as required by *Mata v. State*, 46 S.W.3d 902, 916-17 (Tex. Crim. App. 2001)). That court held, however, that the error was harmless because the State did not emphasize the evidence and ample other evidence showed that Hazlip was guilty of driving while intoxicated. The court explained:

> Because the erroneous admission of retrograde extrapolation testimony is non-constitutional error, we will reverse only if the error affected Hazlip's substantial rights. *See* Tex. R. App. P. 44.2(b); *Bagheri v. State*, 119 S.W.3d 755,

---

[54](...continued)
to state a claim because judicial rulings, standing alone, are not evidence of bias. *See Liteky*, 510 U.S. at 555.

[55]     Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 142.

[56]     *Id.* at 151-52.

[57]     Brief in Support, Docket Entry No. 9, at 78-85.

763 (Tex. Crim. App. 2003); *Burns*, 298 S.W.3d at 703. In considering non-constitutional error, we must disregard the error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Bagheri*, 119 S.W.3d at 763 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). The important factors that we will consider are (1) the nature of the evidence supporting the verdict, and (2) the character of the alleged error and how it might be considered in connection with other evidence in the case. *See id.* (quoting *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)). We also consider whether (1) the State emphasized the error, (2) the erroneously admitted evidence was cumulative, and (3) the testimony was elicited from an expert. *See id.*

First, we note the jury charge defines the term "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of at least two or more of those substances, or any other substance into the body." *See* Tex. Penal Code Ann. § 49.01(2)(A) (West 2011). The jury charge used in Hazlip's case did not include a charge on "per se theory," as it did not define the term "intoxicated" as having an "alcohol concentration of 0.08 or more." *See id.* § 49.01(2)(B) (West 2011). Because the trial court charged the jury solely under an "impairment theory," the jury relied upon the impairment definition of intoxicated when it convicted Hazlip of the offense. *Cf. Bagheri*, 119 S.W.3d at 762–63.

During the case, the State did not significantly emphasize the objected-to estimate of Hazlip's blood-alcohol level while driving. For example, the estimate was not mentioned by the State during voir dire or in opening statements. During opening statement, the State explained that its evidence, which included 911 telephone conversations and multiple witnesses, would prove that Hazlip was intoxicated. During final argument, the State relied primarily on testimony about Hazlip's erratic driving and testimony about how he acted shortly after he encountered the police in arguing that Hazlip was intoxicated, rather than Stafford's estimate. While the State briefly referenced Stafford's estimate twice during rebuttal, the State did not emphasize Stafford's credentials. Additionally, Hazlip did not offer evidence that undermined the results of the sole blood-alcohol test the trial court admitted before the jury.

Other evidence admitted during Hazlip's trial shows that he was guilty of driving while intoxicated. For example, there was testimony that a SUV like Hazlip's had been seen driven erratically shortly before Hazlip's arrest later that same evening. There was evidence that Hazlip crashed into some bushes in front of a home shortly before he was arrested. After the SUV crashed, Hazlip asked a person he saw nearby, G.O., to help him pull the SUV out of the bushes. When G.O. declined, Hazlip threatened to kill him. In response, G.O. "called 911." Shortly after the crash, when the police responded to G.O.'s call, the investigating officer who encountered Hazlip

testified at trial that he thought Hazlip was intoxicated. According to Trooper Martin, when he first encountered Hazlip, he was belligerent, irate, uncooperative, and unable to answer questions. Hazlip showed many signs of intoxication, including slurred speech. Specifically, Trooper Martin testified that he believed Hazlip was intoxicated because Hazlip was swaying, had a blank stare, had alcohol on his breath, gave deceptive answers, seemed unsure about what was going on at the scene, and gave conflicting statements about what happened. Hazlip informed Trooper Martin that he had taken several prescription medications. Although Hazlip claimed that the SUV was not his vehicle, Trooper Martin found Hazlip's personal items inside the SUV. Trooper Martin also found beer in the SUV. Trooper Martin testified that based on what he saw, he felt sure that Hazlip was intoxicated. Hazlip refused Trooper Martin's request for a blood sample.

The evidence before the jury demonstrates that Hazlip had ingested both alcohol and prescription medications on the evening he was arrested. Several witnesses saw Hazlip driving in a manner consistent with intoxication. Hazlip appeared intoxicated to Trooper Martin, exhibited behavior consistent with intoxication, and Hazlip attempted to avoid being detected for driving while intoxicated by refusing Trooper Martin's request for a blood sample. Having carefully reviewed the record, we conclude that substantial evidence, unrelated to Stafford's estimate, allowed the jury to find Hazlip guilty beyond reasonable doubt. *See Burns*, 298 S.W.3d at 704–05 (finding that retrograde extrapolation was cumulative of other evidence of intoxication). We conclude that the erroneous admission of Stafford's estimate had but a slight effect on the jury, and we overrule issue two.

*Hazlip*, 2012 WL 4466352, at *5-6. Because the Texas Court of Criminal Appeals summarily rejected Hazlip's petition for discretionary review, the intermediate appellate court's decision is "the last reasoned opinion" on this claim for purposes of federal habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–06 (1991).

When, as here, a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under 28 U.S.C. § 2254 unless the harmlessness determination itself was unreasonable. *See Fry*, 551 U.S. at 119 (citing *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam)). The record confirms that the State referred to the retrograde-extrapolation testimony only twice during its closing argument, and then only to rebut defense counsel's contention that the

State failed to prove intoxication.[58]  The record further confirms that there was substantial evidence besides Stafford's retrograde-extrapolation estimate to prove Hazlip's guilt beyond a reasonable doubt.  Hazlip has not shown that the state court's harmlessness determination was unreasonable.  He is not entitled to relief.  The respondent's motion for summary judgment dismissing this claim is granted.

## IV.    The Claim of Prosecutorial Misconduct (Claim 2)

Hazlip contends that the prosecutor engaged in misconduct by making an improper remark during closing argument.  Hazlip contends that the prosecutor improperly injected facts not in evidence when he referred to testimony attributed to Trooper Martin about whether an unidentified witness told him that he saw Hazlip driving the vehicle on the night of the offense.[59]  The state habeas corpus court rejected this claim, concluding that the prosecutor's comment "was non-substantive and did not affect the outcome of the case."[60]

A prosecutor's allegedly improper comments or closing argument "are not considered in isolation, but are evaluated in the context of the entire trial as a whole including the prosecutor's entire closing argument." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985) (citation omitted).  Improper comments in a closing do not violate the Constitution unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "There is such unfairness only if the prosecutor's remarks evince either persistent and

---

[58]    Court Reporter's Record, vol. 4, Docket Entry No. 19-7, at 30, 34.

[59]    Petition, Docket Entry No. 1, at 8-9; Brief in Support, Docket Entry No. 9, at 19.

[60]    Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 85.

pronounced misconduct or . . . the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Kirkpatrick*, 777 F.2d at 281 (internal quotation marks and citation omitted); *see also Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) ("A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted.").

Hazlip challenges one comment that evidence showed Hazlip to be the driver of the red-and-white Chevy Blazer that was seen driving erratically and crashed on the night of the offense. The State did not present testimony from particular witnesses positively identifying Hazlip as the driver. Olvera admitted that he did not see the driver's face as the Blazer sped by him or that it was Hazlip sitting behind the wheel.[61]  But Olvera testified that he saw Hazlip leaving the vehicle immediately after it crashed onto his property.[62]  Olvera also testified that he saw only one man—Hazlip—at the scene.[63]  He testified that Hazlip threatened to kill him for refusing to help pull the Blazer out of the ditch.[64]  The record also shows that Trooper Martin collected other evidence establishing that Hazlip was the driver, including documents with his name and address.

During closing argument, the prosecutor stated as follows:

PROSECUTOR:    Now, going back to how we know he operated the vehicle remember how [Trooper Martin] said, "No, I didn't just listen to Gustavo Olvera and I didn't just listen to the Call Notes. *As I was leaving the scene, somebody came up to me and said "I saw — that guy that you just arrested, I saw him driving that car."*  And he didn't get his name, so I wasn't going to —

---

[61]    Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 174.

[62]    *Id.* at 159-64.

[63]    *Id.* at 159.

[64]    *Id.* at 164.

| | |
|---|---|
| DEFENSE: | I object, Your Honor.  Those are facts not in evidence. |
| COURT: | I think there was some evidence.  Overruled.[65] |

The prosecutor then continued to summarize the evidence Trooper Martin collected during his investigation that identified Hazlip as the driver, including documents and personal items with Hazlip's name and address that were recovered from the driver's compartment.[66]

Although Hazlip maintains that the prosecutor's comment was not supported by any evidence, the record shows otherwise.  Trooper Martin testified that based on everything he learned on the night of the offense, including speaking to witnesses at the scene, there was "no doubt in [his] mind that [Hazlip] was the driver."[67]  Martin testified that witnesses at the scene placed Hazlip behind the wheel, but he did not collect their names because he had already established that Hazlip was driving the vehicle.[68]  Martin mentioned those witnesses again during his cross-examination:

| | |
|---|---|
| DEFENSE: | Now, you mentioned that you talked to a witness out there.  Did you personally speak — |
| MARTIN: | I talked to a couple of witnesses, yes. |
| DEFENSE: | A couple of witnesses? |
| MARTIN: | Uh huh. |

* * *

| | |
|---|---|
| MARTIN: | There was somebody, but it was a — they had drove up to my car when I was leaving the scene. |

---

[65]  Court Reporter's Record, vol. 4, Docket Entry No. 19-7, at 35 (emphasis added).

[66]  *Id.* at 36-37.

[67]  Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 115-16.

[68]  *Id.* at 116-17.

| | |
|---|---|
| DEFENSE: | Okay. So was a name gotten from that person |
| MARTIN: | I did not get a name from that person. |
| DEFENSE: | And if someone had information maybe to aid in this proceeding, don't you think it would have been important to get that person's name? |
| MARTIN: | I was in the middle of trying to get the accident taken care of, and they had drove up when I was leaving the scene.[69] |

Although Trooper Martin did not repeat what the unidentified witness told him, it is clear from his testimony that he viewed the information as even more proof that Hazlip was driving the vehicle that crashed onto Olvera's property.

A Texas prosecutor may make an argument that is based on "a reasonable deduction from the evidence." *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000). Martin's comment, read with the rest of his testimony, easily supports an inference that witnesses approached him at the scene and identified Hazlip as the driver, but Martin did not take their names because Hazlip's identity as the driver was not seriously in question. Based on this record, Hazlip does not show that the argument was improper. Even assuming that it was, Hazlip does not show that the isolated remark was such an egregious misstatement that it made his entire trial fundamentally unfair. The overwhelming evidence showing that he was the driver of the vehicle that night precludes that finding. *See Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) ("[A] prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most 'egregious cases.'") (citations omitted).

---

[69] *Id.* at 129-30.

Hazlip does not show that the state court's decision to reject this claim was unreasonable. He is not entitled to relief on this claim. The respondent's motion for summary judgment dismissing the claim is granted.

## V.      The Claims of Ineffective Assistance by Trial Counsel (Claim 3)

In Claims 3a, 3b, 3c, 3d, 3e, 3f, 3g, 3h, 3i, and 3j, Hazlip contends that he was denied effective assistance of counsel at his trial. After considering a detailed affidavit from Hazlip's trial attorney, Andrea Sadler, the state habeas corpus court rejected Hazlip's claims because he failed to establish that his counsel's performance was deficient or that the outcome would have been different, absent counsel's alleged errors.[70]

A defendant's ineffective-assistance claim is analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result. *See id*. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Id.* Failing to show either deficient performance or prejudice is fatal to an ineffective-assistance claim. *See id*. at 683; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This is a "highly deferential" inquiry in which "counsel is strongly presumed to have rendered adequate assistance" and that the challenged conduct was the product of reasoned trial strategy. *Id*. at 690. To overcome this presumption, a defendant must identify counsel's acts or omissions that

---

[70]      Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 86.

did not result from reasonable professional judgment. *Id.* Counsel's error, even if professionally unreasonable, does not warrant setting aside a conviction if the error had no effect on the outcome. *Id.* at 691. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

When, as here, the state habeas court rejected the petitioner's ineffective-assistance claims, the central question is not whether the federal habeas corpus court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was *unreasonable* — a substantially higher standard.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)) (emphasis added). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* The highly deferential standard found in 28 U.S.C. § 2254(d) makes review of ineffective-assistance claims "doubly deferential" on federal habeas corpus review. *Knowles*, 556 U.S. at 123; *see also Richter*, 562 U.S. at 105 (the standards created by *Strickland* and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); *Beatty v Stephens*, 759 F.3d 455, 463 (5th Cir. 2014) (same). The state court's decision must be upheld on federal habeas review if there is any "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## A. The Claim of Counsel's Failure to Investigate or Present an Insanity Defense (Claim 3a)

Defense counsel explained in her affidavit to the state habeas corpus court that she made a strategic decision not to present an insanity defense because Hazlip insisted that he was not the driver of the vehicle that crashed onto Olvera's property.[71] She explained that during her discussions with Hazlip, he "never indicated that he was insane," and the evidence did not support that theory.[72] Instead, the evidence showed that Hazlip's actions on the night of the offense were from intoxication, not insanity.[73] Counsel chose the strategy of arguing that there was only scant evidence showing that Hazlip was the one driving the vehicle.[74]

The state habeas corpus court found that defense counsel's explanation was credible and that the strategic reason she did not present an insanity defense was that she did not believe that it could succeed.[75] The state court found that "[Hazlip's] behavior at the scene of the crash indicated that he understood his behavior was illegal."[76] The state court implicitly found that Hazlip did not meet the legal definition of insanity under Texas law.[77] The record supports that finding.

---

[71]      Affidavit of Andrea Sadler, Docket Entry No. 20-22, at 5.

[72]      *Id.*

[73]      *Id.*

[74]      *Id.* at 5-6.

[75]      Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 82.

[76]      *Id.* at 83.

[77]      Under Texas law, insanity is an affirmative defense that requires a defendant to prove that "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." Tex. Penal Code § 8.01(a). In the context of an insanity defense, the term "wrong" means "illegal." *Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008).

The Fifth Circuit has repeatedly held that a "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 5008) (citing *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir.2002)); *see also Jones*, 287 F.3d at 331 ("'Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed.'" (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999))); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.")).

Hazlip does not present or point to any evidence that calls into question the state court's decision to credit defense counsel's affidavit.[78]  He does not refute any of the other fact findings made in connection with this claim.  Hazlip does not allege what additional investigation would have shown or how it would have made a difference.  *See Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief because the petitioner "offered nothing more than the conclusory allegations in his pleadings" to support his claim that counsel was ineffective for failing to investigate and present evidence).  Apart from pointing to his own belligerent behavior on the night of his arrest, Hazlip does not provide any proof that he was insane at the time of the offense or show

---

[78]     Hazlip argues that his counsel's affidavit is not credible regarding this issue because she is not a psychologist capable of determining whether or not he was insane.  *See* Petitioner's Traverse, Docket Entry No. 24-1, at 26-29.  Hazlip does not allege facts or present any evidence, however, to contradict defense counsel's observations about her client or her assessment about his conduct on the night of the offense. Hazlip's bare allegations are not sufficient to overcome the state habeas corpus court's fact findings or credibility determinations, which are presumed correct in the absence of "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

that insanity was a viable defense. Based on this record, he does not show that his counsel's strategic decision was flawed or deficient or that the state court's decision to reject this claim was unreasonable. He is not entitled to relief on this issue. The respondent's motion for summary judgment dismissing this claim is granted.

**B.     The Claim that Counsel Failed to Challenge Competency (Claim 3b)**

Hazlip contends that his trial counsel was deficient because she failed to properly challenge his lack of competence to stand trial or object to the trial court's finding that he was competent.[79] Counsel responded to this allegation in her affidavit to the state habeas court, summarizing her efforts to challenge Hazlip's competency:

> The Court made an informal inquiry as to competency, which included questioning Mr. Hazlip and personally contacting the Montgomery County Jail regarding the administering of Mr. Hazlip's medications. [RR-2 14–15] The Court questioned Mr. Hazlip on the record and the Court explained to Mr. Hazlip that the Court contacted the jail, was informed that Mr. Hazlip was doing very well at the jail, and that he was respectful, and that Mr. Hazlip had been compliant with regard to taking his medication. [RR-2 18]. In making a determination as to competency, the Court considered the fact that Dr. Walter Quijano evaluated Mr. Hazlip and determined that Mr. Hazlip was competent to stand trial. [RR-2 26] After these findings, the Court was satisfied that Mr. Hazlip was competent to stand trial. [RR-2 at 4–26].[80]

Defense counsel also explained why she believed she neither needed to, nor should, object to the trial court's finding that Hazlip was competent:

> I believed the Court correctly handled the issue of competency in making its informal inquiry. I therefore did not object to the trial court's determination of competency. I recall meeting [with] Mr. Hazlip a few days before trial was to begin, I informed Mr. Hazlip, that for the first time since this case was indicted, we received a plea bargain offer under the minimum 25 year sentence. I explained to Mr. Hazlip that the State offered 15 years aggravated, or in other words, with a deadly weapon finding. Mr. Hazlip refused the offer and told me to tell the prosecutor that he would accept

---

[79]     Petition, Docket Entry No. 1, at 11-12; Brief in Support, Docket Entry No. 9, at 35-44.

[80]     Affidavit of Andrea Sadler, Docket Entry No. 20-22, at 6.

the 15 year offer if she "dropped the aggravated". I went back to the assistant district attorney with Mr. Hazlip's counter-offer. The prosecutor refused to drop the aggravated. I then advised Mr. Hazlip that the prosecutor will not drop the aggravated and Mr. Hazlip again rejected the plea offer.

As Mr. Hazlip['s] trial attorney, I believed that he was competent in that he understood the plea negotiation process and he fully understood the risks he was undertaking by going to trial. He was confident that the State would have trouble proving a necessary element of the charge — driving. It was apparent to me that [the amount of time] he would have to serve in TDCJ would hinge on whether he entered a plea to an aggravated charge versus a nonaggravated charge. I recommended that he accept the plea offer, but he did not want to plea to an aggravated charge.

Although my defense expert previously determined Mr. Hazlip to be competent, I believed I had a duty to bring the issue of competency before the Court due to the fact that Mr. Hazlip was insisting he wasn't getting his medication. Mr. Hazlip no longer wanted me to represent him and he wanted to hire his own attorney [RR-2 21]. I considered that this might have been Mr. Hazlip's way of trying to postpone the proceedings to possibly hire an attorney or secure a better plea offer. By all accounts, after considering the informal inquiry conducted by the Court, and reflecting on my very own recent discussions with Mr. Hazlip concerning the rejected plea offer and trial, as well as Mr. Hazlip's appearance and demeanor in the courtroom, I believed Mr. Hazlip to be competent and that the ruling was appropriate. Mr. Hazlip appeared to me to have a rational and factual understanding of the proceedings.[81]

In rejecting this claim, the state habeas corpus court credited Sadler's account. The court found that her decision not to pursue the competency issue was reasonable "because she believed [Hazlip] was competent based on his interactions with her; [Hazlip] appeared to understand the legal process and the charges against him[;] and he even offered a potential negotiation position during plea negotiations."[82]

Hazlip does not present or point to record evidence to refute his defense counsel's assertions, which were deemed credible on state habeas review. He fails to identify record evidence rebutting

---

[81]     *Id.* at 7.

[82]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 83.

the state court's fact findings. He does not present or point to evidence showing that he was incompetent to stand trial. He does not allege what else his counsel could have done to challenge his competency. He does not allege facts showing that his counsel had a specific objection that could have been made within the limits of professional advocacy and that was likely succeed. Absent a showing that counsel failed to raise a meritorious objection, Hazlip does not show that counsel was deficient in not objecting or that making the objection would have changed the outcome. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions."). Hazlip does not show that the state court's decision was unreasonable. He is not entitled to relief on this issue. The respondent's motion for summary judgment dismissing this claim is granted.

### C. The Claim of Counsel's Failure to Object to Evidence of a 911 Call (Claim 3c)

Hazlip contends that his trial counsel was deficient because she failed to object to the admission of a tape-recorded 911 call in which the caller described a red-and-white Chevy Blazer being driven recklessly, running a red light, and almost hitting other vehicles.[83] Hazlip contends that he was prejudiced by his counsel's failure to object because this evidence supported the jury's affirmative finding that the vehicle he was driving was a deadly weapon under state law.[84] Because

---

[83]     Brief in Support, Docket Entry No. 9, at 45, 47, 49-50.

[84]     *Id.*

the jury determined that Hazlip used a deadly weapon to commit the offense, he is not eligible for early release from prison on mandatory supervision and he is not eligible for parole until he serves a certain portion of his sentence.[85]

The state habeas corpus court found, and the record confirms, that defense counsel *did* object to the introduction of the 911 call.[86] The objection cited hearsay and lack of relevance due to the lapse in time between the call and the crash on Olvera's property.[87] The trial court overruled each objection.[88] Defense counsel explained in her affidavit that she did not object further because she believed there was sufficient evidence linking the vehicle described in the 911 call to the vehicle that Hazlip was driving on the night of the offense.[89]

Hazlip does not propose any other valid objection that his counsel could have raised. He does not otherwise show that the 911 call was improperly admitted. Because his conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice, he fails to present a valid ineffective-assistance claim. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009). He is not entitled to relief under 28 U.S.C. § 2254(d). The respondent's motion for summary judgment dismissing this claim is granted.

---

[85]     Petition, Docket Entry No. 1, at 8; Brief in Support, Docket Entry No. 9, at 51 (referencing Tex. Gov't Code § 508.145).

[86]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 83; Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 26-30.

[87]     Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 26-30

[88]     *Id.*

[89]     Affidavit of Andrea Sadler, Docket Entry No. 20-22, at 8.

### D. The Claim of Counsel's Failure to Impeach a Witness (Claim 3d)

Hazlip contends that his trial counsel was deficient because she failed to impeach a key witness, Gustavo Olvera, about testimony the State used to prove that Hazlip's vehicle was a deadly weapon.[90] Olvera's testified that he and his four-year-old daughter were walking down the street on the night in question when they had to quickly move out of the way to avoid being hit by the Blazer, which passed them at a high rate of speed and crashed in a ditch on Olvera's property.[91] Hazlip contends that his counsel was deficient for failing to call her private investigator to the stand to testify that Olvera told the investigator that he heard the vehicle crash on his property, but did not see it happen.[92]

In the state habeas court, defense counsel explained that her private investigator, Escamilla, was available to testify, but that she did not call him because Olvera had already admitted on cross-examination that he did not actually see the face of the person driving the vehicle or see the driver exit the vehicle after it crashed.[93] Because Olvera's trial testimony did not materially deviate from the statements he had previously made to investigator Escamilla, defense counsel did not believe it was necessary to call Escamilla as a witness.[94] To the contrary, she thought it was inadvisable

---

[90]     Petition, Docket Entry No. 1, at 13; Brief in Support, Docket Entry No. 9, at 45-48.

[91]     Petition, Docket Entry No. 1, at 13; Brief in Support, Docket Entry No. 9, at 46-47.

[92]     Petition, Docket Entry No. 1, at 13; Brief in Support, Docket Entry No. 9, at 46-47.

[93]     Affidavit of Andrea Sadler, Docket Entry No. 20-22, at 8.

[94]     *Id.* at 8-9.

trial strategy because the jury had seemed to like Mr. Olvera and she did not want to alienate the jury by attacking him.[95]

In rejecting Hazlip's claim, the state habeas corpus court found that defense counsel "strategically chose not to impeach Olvera's testimony because she did not want to alienate the jury; the jury appeared to like Olvera[;] and Olvera admitted to not fully paying attention to [Hazlip]'s vehicle as he sped by."[96]  The record confirms that Olvera clarified on cross-examination that he did not see the driver's face as the vehicle passed him, and that he believed that Hazlip was the only driver because he saw Hazlip walking away from the vehicle after he heard—not saw—the crash.[97]

Cross-examination and choices on impeaching witnesses are matters of trial strategy and are entitled to substantial deference.  *See Strickland*, 466 U.S. at 690.  Hazlip does not show that his counsel's trial strategy was unreasonable or deficient; that testimony from the investigator would have been anything but cumulative; or that he was prejudiced.  *See Chanthakoummane v. Stephens*, 816 F.3d 62, 71 (5th Cir. 2016) (citing *Lincecum v. Collins*, 958 F.2d 1271, 1280 (5th Cir. 1992) (no prejudice occurred when the unpresented evidence would have been cumulative of evidence already presented)), *cert. denied*, 137 S. Ct. 280 (2016).  Hazlip does not otherwise show that the state court's conclusion was unreasonable.  He is not entitled to relief on this claim.  The respondent's motion for summary judgment dismissing this claim is granted.

---

[95]     *Id.* at 9.

[96]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 83.

[97]     Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 173-76.

### E.     The Claim of Counsel's Failure to Object to the Jury Instructions (Claim 3e)

Hazlip challenges a special issue in the jury instructions at the guilt-or-innocence phase of the trial.  The special issue asked the jury to find whether a deadly weapon was used during the commission of the offense.[98]  The following deadly-weapon instruction was given:

> "Deadly weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

> "Serious bodily injury" means injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss of impairment of the function of any bodily member or organ.

> "Bodily injury" means physical pain, illness or any impairment of physical condition.

> Now if you find beyond a reasonable doubt that the defendant is guilty of driving while intoxicated, and if you further find beyond a reasonable doubt that the defendant used or exhibited a deadly weapon during the commission of the offense or during immediate flight therefrom, you will so state in your verdict, but if you do not so find or if you have a reasonable doubt thereof, you will state that the defendant did not use or exhibit a deadly weapon during the commission of the offense or during immediate flight therefrom.[99]

Hazlip contends that his trial counsel was deficient because she did not object to the inclusion of the word "exhibit" or to the trial court's failure to include an application paragraph to assist the jury.[100]

In response to this claim, defense counsel explained that she did not object to the deadly-weapon instruction because she believed it was proper.[101]  The state habeas corpus court agreed,

---

[98]     Petition, Docket Entry No. 1, at 13-14; Brief in Support, Docket Entry No. 9, at 45, 50-55.

[99]     Charge to the Jury, Docket Entry No. 19-2, at 82-83.

[100]     Brief in Support, Docket Entry No. 9, at 54-55.

[101]     Affidavit of Andrea Sadler, Docket Entry No. 20-22, at 9.

concluding that "[t]he jury charge correctly applied the law to the facts and adequately instructed the jury on the deadly weapon finding."[102]

The record does not reflect that the jury charge was wrong under state law or that the deadly-weapon instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Looking at the challenged instruction in the context of the overall charge, Hazlip does not show that the jury was likely to misapply the deadly-weapon instruction or that the state court was unreasonable in finding the jury charge sufficient. *See, e.g., Thacker v. Dretke*, 396 F.3d 607, 615 (5th Cir. 2005). As a result, he does not show that trial counsel's failure to object to the charge fell below "an objectively reasonable standard of professional conduct." *Id.* Nor does he show that the result of his proceeding would have been different if counsel had challenged the wording or moved for an application instruction. He does not establish deficient performance or actual prejudice and is not entitled to relief on this claim. The respondent's motion for summary judgment dismissing this claim is granted.

## F. The Claim of Counsel's Failure to Object to Numerous Errors by the Trial Court (Claim 3f)

In his federal habeas petition, Hazlip presents a laundry list of alleged deficiencies for his counsel's failure to object to the trial court's rulings.[103] He presents cites to the record, but he provides no briefing and no facts explaining why the challenged rulings were improper, what objection his counsel should have made in response, and whether the outcome would have changed

---

[102]    Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 86.

[103]    Petition, Docket Entry No. 1, at 15.

if she had objected.[104]   The state habeas corpus court rejected Hazlip's conclusory allegations, concluding that he "failed to meet his burden of showing that counsel was ineffective for failing to object to miscellaneous alleged trial errors."[105]   "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).   Hazlip does not show that the state court's conclusion was unreasonable.   He does not demonstrate that he is entitled to relief on this claim. The respondent's motion for summary judgment dismissing this claim is granted.

### G.      The Claim of Counsel's Failure to Object to Bias (Claim 3g)

Hazlip contends that his defense counsel was deficient because she failed to object to comments that indicated improper bias by the trial court.[106]   Hazlip appears to refer to the same comments discussed in connection with the allegations in Claim 1c that the trial court displayed bias against him during voir dire.   Because Hazlip has not demonstrated that his trial was tainted by unfair bias, his ineffective-assistance claim also fails.   He does not establish that his counsel failed to make a valid objection or that the result of his proceeding would have been different if she had objected.   Hazlip does not establish a viable ineffective-assistance claim or show that he is entitled to relief on this issue.   The respondent's motion for summary judgment dismissing this claim is granted.

---

[104]      *See id.*

[105]      Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 86.

[106]      Petition, Docket Entry No. 1, at 15.

**H.      The Claim of Counsel's Failure to Object to a Violation of "the Rule" (Claim 3h)**

Hazlip contends that his trial counsel was deficient because she failed to object to a violation of "the Rule." Hazlip alleges that the trial court "[a]llowed ex parte and private communications between State's witnesses in violation of [the Rule]" and refused to remove the jury from the courtroom to address the alleged violation.[107]

Rule 614 of the Texas Rules of Evidence — "the Rule" — provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Tex. R. Evid. 614.[108] Its purpose is "to prevent the testimony of one witness from influencing the testimony of another." *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989) (quoting *Cook v. State*, 30 Tex. App. 607, 18 S.W.412 (1892)); *see also Sponsler v. State*, No. 03-11-00654-CR, 2013 WL 6002763, *10 (Tex. App. — Austin Nov. 8, 2013, pet. ref'd) (Rule 614 codifies the "witness-sequestration rule," which is "designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony") (citations omitted).

The record reflects that the Rule was invoked at the start of Hazlip's trial.[109] The witnesses were instructed not to discuss the case with one another while waiting to testify.[110] Defense counsel asked for a bench conference at one point in the trial and expressed concern about "the trooper

---

[107]      Brief in Support, Docket Entry No. 9, at 10, 62-63.

[108]      There is a corresponding provision found in Rule 615 of the Federal Rules of Evidence.

[109]      Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 9.

[110]      *Id.*

talking with the State's witnesses outside in the hallway."[111] The trial court responded by giving the attorneys for both sides "two minutes to go outside and just make sure that they know they are under the rule."[112] The attorneys returned and reported that the witnesses were "talking about Mexico" and were not talking about the case.[113]

Hazlip presents no evidence that there was any misconduct on the part of the witnesses or that there was a Rule violation. He does not show that his counsel had a valid objection that she failed to make. The state court's rejection of this claim was not unreasonable. Hazlip is not entitled to relief on this issue. The respondent's motion for summary judgment dismissing this claim is granted.

## I.    The Claim of Counsel's Failure to Interview Witnesses or Know the Applicable Law (Claim 3i)

Hazlip contends that his trial counsel was deficient because she failed to interview witnesses or have a firm command of the applicable law.[114] Once again, Hazlip recites a list of allegations with cites to the record, but he provides no briefing and no facts showing how his attorney fell short in any of these instances.[115] Hazlip does not identify any witnesses who should and could have been interviewed, but were not, or allege what they would have said if they had been interviewed. He does not articulate facts showing that his attorney had a viable legal argument that she did not know about or raise or showing that the making some other legal argument would have changed the result.

---

[111]    Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 150.

[112]    *Id.*

[113]    *Id.*

[114]    Petition, Docket Entry No. 1, at 16-17.

[115]    *Id.*

The state habeas corpus court rejected this conclusory claim after finding that defense counsel "appeared to have adequate knowledge of all relevant areas of the law, and any lack of knowledge had no effect on the outcome of [Hazlip's] case."[116] The state court concluded that Hazlip "failed to meet his burden of showing that counsel lacked knowledge of the law to the extent that it had any effect on the outcome of the case."[117] His federal claim is also conclusory. This court's review of the record shows that defense counsel retained an expert to evaluate Hazlip's competency, filed appropriate motions, raised cogent arguments and objections throughout the trial, capably cross-examined all of the State's witnesses, and called several witnesses to testify on Hazlip's behalf during the punishment proceeding. Considering the evidence against him, Hazlip does not show that his attorney's overall performance was hampered by any lack of knowledge of the facts or the applicable law. Hazlip does not show that the state court's decision to reject this claim was unreasonable. He is not entitled to relief on this claim. The respondent's motion for summary judgment dismissing this claim is granted.

### J.    The Claim of Counsel's Failure to File a Motion to Suppress (Claim 3j)

This claim has three parts.[118] Hazlip contends that counsel was deficient for failing to file an adequate motion to suppress: (1) Hazlip's statements to Trooper Martin on the night of the offense; (2) evidence seized as the result of Hazlip's arrest; and (3) the blood-alcohol test results.[119] An attorney's failure to file a motion to suppress may be deficient if the evidence would have been

---

[116]    Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 84.

[117]    *Id.* at 86.

[118]    Petition, Docket Entry No. 1, at 17-18.

[119]    *Id.*

suppressed had a motion been filed. *See Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005). The petitioner bears the burden of proving that the evidence would have been suppressed as a result of an adequate motion or objection. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Hazlip does not meet that burden for any of the three claims.

### 1. Hazlip's Statements to Trooper Martin (Claim 3j — Part One)

The first issue is the statements Hazlip made to police on the night of the offense.[120] Trooper Martin testified that when he encountered Hazlip at the scene of the crash and asked him for identification, which Hazlip did not have, Hazlip's response was hard to understand because his speech was "very slurred."[121] When asked, Hazlip could not spell his name.[122] Martin noted that Hazlip, who had been detained at the scene by Deputy Ortiz, gave incorrect information about where he was picked up.[123] He denied owning the Chevy Blazer despite evidence to the contrary.[124] When Trooper Martin asked Hazlip other questions about the crash and how it happened, he became belligerent and began yelling profanity.[125] Hazlip smelled of alcohol and appeared intoxicated.[126]

---

[120]    *Id.*

[121]    Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 65.

[122]    *Id.* at 65-66.

[123]    *Id.* at 66.

[124]    *Id.* at 66-68.

[125]    *Id.* at 67-68.

[126]    *Id.* at 68-69.

Martin asked him to perform some standard field-sobriety tests.[127]  When Hazlip refused, Trooper

Martin arrested him for driving while intoxicated.[128]

Hazlip contends that his defense counsel failed to raise a violation of *Miranda v. Arizona*,

384 U.S. 436 (1966).[129]  Defense counsel explained in her affidavit filed in the state habeas court that

she filed a motion to suppress and objected to Trooper Martin's testimony about Hazlip's statements

before Martin testified to the jury.[130]  The state habeas corpus court rejected Hazlip's allegation of

deficient performance.[131]  The record supports that decision.

The record shows that defense counsel filed a pretrial motion to suppress Hazlip's statements

to police, and she reurged the motion before Trooper Martin testified.[132]  The trial court considered

the motion during a hearing outside the jury's presence.[133]  During that hearing, Trooper Martin

testified that he spoke to Hazlip while investigating the crash and asked him several general

questions about "what happened."[134]  Although Deputy Ortiz had handcuffed Hazlip because he

"was becoming belligerent and irate,"[135]  Trooper Martin had the handcuffs removed while he asked

---

[127]  *Id.* at 69.

[128]  *Id.*

[129]  Petition, Docket Entry No. 1, at 17-18.

[130]  Affidavit of Andrea Sadler, Docket Entry No. 20-22, at 9.

[131]  Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 84.

[132]  Motion to Suppress, Docket Entry No. 19-2, at 62-65.

[133]  Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 47-64.

[134]  *Id.* at 50-51.

[135]  *Id.* at 49.

these questions.[136]  After both counsel argued, the trial court denied the motion to suppress, finding that Hazlip made the statements while temporarily detained for investigative purposes and not during custodial interrogation.[137]

The record confirms that at this hearing, defense counsel cited the relevant legal authority. She argued that Hazlip's detention was coercive and that Trooper Martin's questions were custodial interrogation because Hazlip was not free to leave.[138]  Hazlip does not identify any other argument his counsel could have made or that would have been successful.  Based on this record, Hazlip fails to show that his counsel's performance was deficient or that he was actually prejudiced as a result. Because the state court's decision to reject this claim was not unreasonable, Hazlip is not entitled to relief on this issue.  The respondent's motion for summary judgment dismissing this claim is granted.

## 2.    Hazlip's Arrest (Claim 3j — Part Two)

Hazlip contends that his trial counsel was deficient because she failed to adequately litigate a motion to suppress evidence that the police seized after his arrest.[139]  The evidence was recovered from the Blazer by Trooper Martin.  The vehicle had to be removed by a tow truck.[140]  Trooper Martin inventoried the vehicle's contents before it was towed.  Martin found an assortment of documents with Hazlip's name and address, including an application for food stamps, mail, and a

---

[136]     *Id.* at 50-51.

[137]     *Id*. at 56-64.

[138]     *Id.* at 57-64.

[139]     Petition, Docket Entry No. 1, at 17-18.

[140]     Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 72.

citation from the local constable.[141]  Martin also found cans of beer and "more stuff" bearing Hazlip's name.[142]

The record shows that defense counsel filed a motion to suppress this evidence, alleging that it was seized in an illegal arrest.[143]  The trial court did not rule on the motion.  Defense counsel did not reurge it at trial.  Hazlip contends that counsel was deficient because she failed to challenge the arrest or call Deputy Ortiz as a witness at trial.[144]  Defense counsel explained that she did not challenge the legality of Hazlip's arrest at trial because she did not believe there were "strong legal grounds" for doing so.[145]  She did not call Deputy Ortiz as a witness because the evidence showed that he had handcuffed Hazlip for officer safety due to belligerent behavior, which she did not want to emphasize.[146] Defense counsel also believed that any testimony from Deputy Ortiz would only have corroborated Trooper Martin's testimony and would have strengthened the State's position that probable cause was amply proved, making the arrest clearly legal.[147]

In rejecting Hazlip's claim, the state habeas corpus court found that defense counsel did not call Deputy Ortiz as a witness because "based on her review of the discovery in this case, Ortiz would have provided corroborative testimony of Trooper Martin, and [defense counsel] did not want

---

[141]    *Id.* at 72-76.

[142]    *Id.* at 76.

[143]    Motion to Suppress Evidence Derived from Illegal Arrest, Docket Entry No. 19-2, at 66-68.

[144]    Petition, Docket Entry No. 1, at 17-18.

[145]    Affidavit of Andrea Sadler, Docket Entry No. 20-22, at 10.

[146]    *Id.*

[147]    *Id.*

to bolster either officer's credibility."[148]   Nothing in the record makes this determination unreasonable.

Hazlip does not provide a statement from Deputy Ortiz or identify what he would have said if he had been called as a witness for the defense. "Claims of uncalled witnesses are disfavored [on federal habeas corpus review], especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)); *see also Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) ( "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.") (citations omitted).

To demonstrate the required *Strickland* prejudice in this context, a petitioner "must show not only that [the] testimony [of an uncalled witness] would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  Hazlip does not make this showing.  He does not allege facts or provide authority showing that his defense counsel had a meritorious basis for challenging his arrest.  Hazlip's allegations do not support an inference that his defense counsel's strategy was deficient or that he was actually prejudiced. Because he does not show that the state court's decision to reject this claim was unreasonable, Hazlip is not entitled to relief on this claim.  The respondent's motion for summary judgment dismissing this claim is granted.

---

[148]    Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 84.

### 3. The Claim of Counsel's Failure to Challenge the Blood-Alcohol Test (Claim 3j — Part Three)

Trooper Martin arrested Hazlip for DWI and took him to a local hospital, where Hazlip was required to provide a blood sample because he had at least two prior DWI convictions.[149] Camille Stafford testified that the results of those blood tests placed Hazlip at least three times over the legal limit for intoxication under Texas law.[150] Arguing that the blood test was done without a warrant or valid consent, Hazlip contends that his trial counsel was deficient because she failed to file an adequate motion to suppress the test results.[151]

Taking a blood specimen is a search under the Fourth Amendment. *See Schmerber v. California*, 384 U.S. 757, 767 (1966). Searches done without a warrant generally "are *per se* unreasonable under the Fourth Amendment," *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2010), unless an exception to the warrant requirement applies. Some exceptions are searches incidental to a lawful arrest, consented-to searches, or searches done in the face of exigent circumstances. *See, e.g., Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *Weeks v. United States*, 232 US. 383, 392 (1914)); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted); *Kennedy v. King*, 563 U.S. 452, 473 (2011) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

At the time of Hazlip's offense in 2010 and his trial in February 2011, the Texas Transportation Code deemed consent to obtain blood samples without a search warrant from persons suspected of driving while intoxicated, in certain circumstances. *See* Tex. Transp. Code § 724.011

---

[149] Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 82-84.

[150] *Id.* at 142.

[151] Petition, Docket Entry No. 1, at 18.

(West 2011). The Code provided that any person arrested for driving while intoxicated was deemed to have consented to taking one or more specimens of blood or breath to analyze the alcohol-concentration amount or presence of a controlled substance. *See id.* Despite the consent, a person retained the right to refuse to give a specimen, subject to automatic suspension of his license. *Id.* § 724.013. If the suspect refused to provide a specimen voluntarily and the arresting officer had credible information that he had at least two prior DWI convictions, then the "taking of a specimen of the person's breath or blood" was mandatory. *See id.* § 724.012(b)(3)(B). Taking a blood sample in these circumstances did not violate the Fourth Amendment warrant requirement. *See Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (the implied-consent and mandatory-blood-draw provisions in the Texas Transportation Code gave "officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant").

The law that authorized mandatory blood draws in DWI cases changed several years after Hazlip's case went to trial. In 2013, the Supreme Court issued *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), which held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.* at 1568. A year after *McNeely* was decided, the Texas Court of Criminal Appeals held that "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *State v. Villareal*, 475 S.W.3d 784, 815 (Tex. Crim. App. 2014).

Although defense counsel filed a motion to suppress and challenged the admissibility of Camille Stafford's testimony at trial, counsel did not argue that the Texas implied-consent and mandatory-blood-draw provisions of the Texas Transportation Code were unconstitutional as applied to Hazlip. The state habeas corpus court did not fault defense counsel for failing to make this argument, noting that "[t]he law regarding the validity of mandatory blood draw statutes was unsettled at the time of [Hazlip's] trial, and [defense counsel's] failure to move to suppress a blood test result on the basis that such statutes are unconstitutional was not outrageous."[152] The state habeas corpus court observed that, to the extent that the Texas statute was later called into question by *McNeely* and eventually invalidated by *Villareal*, those decisions were not issued until "years after [Hazlip's] case."[153] The state habeas corpus court concluded that Hazlip "failed to meet his burden to show that [defense counsel's] failure to move to suppress the blood test results on grounds that the mandatory blood draw was unconstitutional fell below the objective standard of reasonableness."[154]

A review of Texas case law reflects that motions to suppress warrantless blood samples taken under Texas Transportation Code § 724.012 were routinely denied when Hazlip was tried in February 2011. *See, e.g., Chidyausiku v. State*, 457 S.W.3d 627, 630 (Tex. App. — Fort Worth 2015, pet. ref'd); *Comperry v. State*, 375 S.W.3d 508 (Tex. App. — Houston [14th Dist.] 2012, no pet.); *Aviles v. State*, 385 S.W.3d 110 (Tex. App. — San Antonio 2012, pet. ref'd); *McIntyre v. State*, No. 05-10-00213-CR, 2011 WL 2536513 (Tex. App. — Dallas June 28, 2011, pet. ref'd).

---

[152]    Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 84.

[153]    *Id.* at 86 (citing *Missouri v. McNeely,* 133 S. Ct. 1552 (2013); *State v. Villlareal*, No. PD-0306-014, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014)).

[154]    *Id.* at 86.

Because Hazlip's blood was drawn under a state statute that was presumptively valid at the time of his trial, Hazlip does not show that his attorney acted unreasonably by failing to pursue what was then a futile motion.  Counsel is not deficient for failing to anticipate subsequent developments in the law.  *See Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997)  ("there is no general duty on the part of defense counsel to anticipate changes in the law . . . and that counsel is not ineffective for failing to raise a claim that Texas courts have rejected repeatedly") (citations omitted); *accord United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009); *Lucas v. Johnson*, 132 F.3d 1069, 1078-79 (5th Cir. 1998); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) ("It will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a prior holding or will underestimate the likelihood that a federal habeas court will repudiate an established state rule.").  Hazlip does not demonstrate that his counsel failed to make an argument that would have been successful when his criminal case was pending.  He does not demonstrate deficient performance or actual prejudice.  Because Hazlip does not show that the state court's decision denying relief was unreasonable, he is not entitled to relief on this claim.  The respondent's motion for summary judgment dismissing this claim is granted.

## VI.     The Claim of Insufficient Evidence (Claim 4)

Hazlip contends that there was no evidence or insufficient evidence to support the jury's finding that a deadly weapon was used to commit the offense.[155]  The state habeas corpus court rejected this claim, finding that "[t]he evidence was sufficient to support the jury's affirmative deadly weapon finding."[156]  The state habeas court pointed to the 911 call reporting a red-and-white

---

[155]     Petition, Docket Entry No. 1, at 12-14; Brief in Support, Docket Entry No. 9, at 45-56.

[156]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 85 (citing *Sierra v. State*, 280
(continued...)

Chevy Blazer being driven recklessly and the testimony from Gustavo Olvera that he and his four-year-old daughter had to get out of the way to avoid the speeding Blazer.[157]  Based on this evidence, the state habeas corpus court concluded that Olvera and his daughter were "endangered by [Hazlip's] intoxicated driving."[158]  Hazlip contends that this evidence was insufficient.

The state habeas corpus court rejected this claim on the merits.  The respondent argues that it is procedurally barred because Hazlip failed to present this issue on direct appeal, in compliance with state law, triggering a procedural default[159]  Alternatively, the respondent argues that the claim is without merit.[160]  This court can and does dispose of the claim on the merits without deciding whether the procedural bar applies.

When the State has offered proof of an element or enhancement, a claim that there was "no evidence" to support a conviction is properly construed on federal habeas corpus review as a challenge to the legal sufficiency of the evidence under *Jackson v. Virginia*, 403 U.S. 307 (1979). *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002), *vacated on other grounds by Dretke v. Haley*, 541 U.S. 386 (2004).  Under the *Jackson* standard, evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2062, 2064 (2012) (per curiam) (quoting *Jackson*, 403 U.S. at 319) (emphasis in original).

---

[156](...continued)
S.W.3d 250 (Tex. Crim. App. 2009)).

[157]      *Id.* at 83.

[158]      *Id.*

[159]      Respondent's Motion, Docket Entry No. 21, at 15-18.

[160]      *Id.* at 18, n.2.

In Texas, a "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B). Texas law authorizes a deadly-weapon finding, with its impact on a defendant's eligibility for community supervision, parole, or mandatory supervision, in felony DWI cases. *Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009) (citing *Mann v State*, 58 S.W.3d 132, 132 (Tex. Crim. App. 2001)). Evidence is sufficient to support a deadly-weapon finding in a felony DWI case if, looking at the evidence in the light most favorable to the prosecution, a rational fact-finder was permitted to conclude that: (1) the defendant was "driving recklessly or dangerously while intoxicated"; and (2) the motor vehicle he was driving was capable of causing death or serious bodily injury at the time of the offense. *Sierra*, 280 S.W.3d at 256. "An automobile can be a deadly weapon if it is driven so as to endanger lives." *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (citing *Tyra v. State*, 897 S.W.2d 796, 798-99 (Tex. Crim. App. 1995)).

The record in this case is more than sufficient for this finding. The record evidence showed that Hazlip was over three times the legal limit for intoxication under Texas law when his blood was drawn four hours after he crashed his vehicle onto Gustavo Olvera's property.[161] Olvera testified that Hazlip was driving "dangerous[ly]," well over the posted speed limit before losing control and crashing onto his property.[162] Trooper Martin testified that Olvera and his daughter were put in danger by Hazlip's reckless driving.[163] The jury could have rationally concluded that Hazlip was reckless — driving his Blazer while extremely intoxicated, running a red light and nearly colliding

---

[161]    Court Reporter's Record, vol. 3, Docket Entry No. 19-6, at 142.

[162]    *Id.* at 168-69.

[163]    *Id.* at 132.

with other vehicles, endangering others as reported by the 911 caller.  The jury could have rationally concluded that Hazlip endangered Olvera and his daughter as he sped down the street and crashed in to Olvera's ditch, running over a fire hydrant in the process.[164]  *See, e.g., Moore v. State*, 520 S.W.3d 906, 912-13 (Tex. Crim. App. 2017) (reinstating a deadly weapon finding in a DWI case in which the defendant was over three times the legal limit while driving in a potentially dangerous manner, even though no one was seriously hurt).

Although Hazlip disagrees with the jury's decision, the Supreme Court has emphasized that the standard of review is highly deferential: "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman*, 132 S. Ct. at 2064 (quoting *Jackson*, 403 U.S. at 319); *see also Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam) (reversing the Sixth Circuit's grant of habeas relief and repeating that, under *Jackson*, "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial") (quoting *Cavazos v. Smith*, 565 U.S. 1, 132 S. Ct. 2, 4 (2011) (per curiam)).  A federal habeas corpus court may not reweigh evidence or substitute its view for that of the factfinder.  *See Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).  The state court's determination as to the sufficiency of the evidence is entitled to "considerable deference" under the AEDPA.  *Coleman*, 132 S. Ct. at 2065; *see also Cavazos*, 565 U.S. at 6 (reversing the Ninth Circuit's decision to grant habeas relief for failure to adhere to the doubly deferential standard of review required by § 2254(d) and *Jackson*).

Hazlip does not overcome that doubly deferential standard here.  He does not show that the state habeas corpus court's conclusion was objectively unreasonable based on the facts available.

---

[164]    *Id*. at 71-72.

Hazlip is not entitled to relief on this issue. The respondent's motion for summary judgment dismissing this claim for lack of merit is granted.

## VII. The Claim of Ineffective Assistance by Appellate Counsel (Claim 5)

In Claims 5a, 5b, 5c, 5d, and 5e, Hazlip contends that he was denied effective assistance of counsel during his direct appeal.[165] With the exception of Claim 5d, which was not raised on state collateral review, the state habeas corpus court concluded that Hazlip was not entitled to relief after considering and finding credible an affidavit from Hazlip's appellate counsel.[166]

A claim of ineffective assistance on appeal is governed by the test *Strickland v. Washington*. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal). To establish that appellate counsel's performance was deficient, the defendant must show that his counsel was objectively unreasonable in failing to raise arguable nonfrivolous issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If the defendant succeeds in showing this, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.* Hazlip does not make this showing with respect to any of his ineffective-assistance claims.

### A. The Claim That His Sentence Was Illegal (Claim 5a)

Hazlip repeats his claim that his sentence was illegal because the State did not present sufficient proof that he had two prior DWI convictions to enhance the misdemeanor offense to a felony. Hazlip contends that his appellate counsel was deficient for failing to raise this claim on

---

[165]     Petition, Docket Entry No. 1, at 8-9, 14, 19-20.

[166]     *See* Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 82, 86; *see also* Affidavit of Patricia Maginnis, Docket Entry No. 20-22, at 2-4.

appeal.[167]  Appellate counsel explained in her affidavit that she did not raise this issue on appeal because the record contained judgments of Hazlip's prior DWI convictions that were supported by Department of Public Safety driving records, which are considered sufficient to support the felony enhancement.[168]  Hazlip has not shown that his sentence was illegally enhanced.  He cannot show that his appellate counsel was deficient for not raising this claim, or that the state court's decision to deny relief was unreasonable.  The respondent's motion for summary judgment dismissing this claim is granted.

### B.        The Claim of Prosecutorial Misconduct (Claim 5b)

Hazlip contends that his appellate counsel was deficient for failing to raise on appeal the prosecutor's remark during closing argument about Trooper Martin's conversation with an unidentified witness who identified Hazlip as the driver.[169]  As discussed in connection with Claim 2, Hazlip did not show prosecutorial misconduct.  Appellate counsel reviewed the trial transcript and reached the same conclusion, noting that the error, if any, was harmless because "the record had substantial evidence linking [Hazlip] to the vehicle."[170]  Hazlip does not show that his counsel's decision to focus on other grounds for relief was deficient or that the result of his appeal would have been any different if appellate counsel had raised this issue.  Hazlip does not demonstrate ineffective assistance and does not show that the state court's decision to reject this claim was unreasonable. The respondent's motion for summary judgment dismissing this claim is granted.

---

[167]        Petition, Docket Entry No. 1, at 8; Brief in Support, Docket Entry No. 9, at 11-18.

[168]        Affidavit of Patricia Maginnis, Docket Entry No. 20-22, at 2-3.

[169]        Petition, Docket Entry No. 1, at 8-10; Brief in Support, Docket Entry No. 9, at 19-26.

[170]        Affidavit of Patricia Maginnis, Docket Entry No. 20-22, at 3-4.

### C. The Claim of Insufficient Evidence to Support the Deadly-Weapon Finding (Claim 5c)

Hazlip contends that his appellate counsel was deficient for failing to challenge the lack of evidence in support of the jury's deadly-weapon finding.[171]  Appellate counsel explained that she did not challenge the sufficiency of the evidence for this finding because she believed that "the deadly weapon finding was sufficiently supported."[172]  The state habeas corpus court concluded that there was sufficient evidence to support the finding.[173]  Hazlip has not shown that this conclusion was objectively unreasonable.  Because Hazlip does not demonstrate that his appellate counsel failed to raise a meritorious issue on appeal or that the result would have been different if she had, he does not show that the state court's decision to reject this claim was unreasonable.  He is not entitled to relief on this claim.  The respondent's motion for summary judgment dismissing this claim is granted.

---

[171]     Brief in Support, Docket Entry No. 9, at 55-56.

[172]     Affidavit of Patricia Maginnis, Docket Entry No. 20-22, at 4.

[173]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 85 (citing *Sierra v. State*, 280 S.W.3d 250 (Tex. Crim. App. 2009)).

### D. The Claim of Counsel's Failure to Adequately Brief the Erroneous Admission of Retrograde-Extrapolation Evidence (Claim 5d)

Hazlip contends that his appellate counsel was deficient for failing to adequately brief the erroneous admission of the retrograde-extrapolation evidence of his blood-alcohol level.[174] The respondent argues that a procedural default bars this claim because Hazlip did not raise it on state collateral review.[175] Hazlip's failure to present this claim properly in state court is a procedural default that bars federal habeas corpus review. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (the Texas abuse-of-the-writ statute that restricts successive habeas applications is regularly and strictly applied, constituting an independent and adequate procedural rule that bars federal review). Because Hazlip does not demonstrate cause for his default or show that any other exception applies, this claim is procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722 (1991).

Alternatively, the claim is without merit. As discussed in more detail in Claim 1d, trial and appellate counsel challenged the retrograde-extrapolation estimate Camille Stafford made during trial on Hazlip's blood-alcohol level at the time of the crash, hours before his blood sample was drawn. The intermediate court of appeals agreed this testimony was admitted in error. *See Hazlip*, 2012 WL 4466352, at * 4. The court of appeals held, however, that the error was harmless because the State did not emphasize the estimate and there was ample other evidence showing that Hazlip was intoxicated. *See id.* at * 5-6. Hazlip does not suggest what else his appellate attorney could have done. He does not demonstrate that his counsel had but failed to make any particular argument or that it would have been successful. His allegations establish neither deficient performance nor actual prejudice. Hazlip does not show that he was denied effective assistance of counsel on appeal

---

[174]     Petition, Docket Entry No. 1, at 19-20; Brief in Support, Docket Entry No. 9, at 78-85.

[175]     Respondent's Motion, Docket Entry No. 21, at 8-10.

with respect to this issue.  The respondent's motion for summary judgment dismissing this claim is granted.

## E.     The Claim that the Jury Instructions were Improper (Claim 5e)

Hazlip contends that his appellate counsel was deficient for failing to argue that the jury instructions on whether a deadly weapon was used during the offense were defective.[176]  As discussed in Claim 3e, Hazlip did not show that the deadly-weapon instructions were erroneous. He did not demonstrate that his trial or appellate counsel had but failed to make a valid argument on this issue.  Hazlip does not show that his appellate counsel was deficient for failing to challenge the jury instructions on the use of a deadly weapon.  He does not demonstrate that the state court's decision to reject this claim was unreasonable.

Hazlip also contends that his appellate counsel was deficient for failing to adequately brief whether the jury instructions given during the punishment phase were deficient because the jury was not told that evidence of prior bad acts could be considered only if the conduct was proven to have occurred beyond a reasonable doubt.[177]  The record reflects that the intermediate court of appeals considered this issue at length and, after reviewing the evidence and arguments of counsel, concluded that Hazlip was not harmed due to the lack of such an instruction.  *See Hazlip*, 2012 WL 4466352, at *6-9.  Hazlip does not propose any other argument that his appellate counsel could have made that would have been successful.  Hazlip does not demonstrate that his appellate counsel had but failed to raise a meritorious argument that would have changed the result on appeal.  He does not demonstrate that his counsel was constitutionally ineffective or that the state court's decision

---

[176]     Petition, Docket Entry No. 1, at 14; Brief in Support, Docket Entry No. 9, at 45-47.

[177]     Petition, Docket Entry No. 1, at 20.

to reject this claim was unreasonable.  Hazlip is not entitled to relief on this claim.  The respondent's motion for summary judgment dismissing this claim is granted.

## VIII.   The Claim of Cumulative Error (Claim 6)

Hazlip finally contends that he is entitled to relief because the cumulative effect of errors denied him a fair trial.[178]  His argument fails.  Federal habeas corpus relief may be granted for cumulative errors in the conduct of a state trial when: (1) the individual errors were constitutional violations, not violations of state law; (2) the errors were not procedurally defaulted for purposes of habeas corpus review; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-49 (1973)); *see also Nobles v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995).  When individual allegations of error are not of constitutional stature or are not errors, there is "nothing to cumulate." *Turner*, 481 F.3d at 301 (citations omitted).

The state habeas court concluded that Hazlip "failed to meet his burden of showing that cumulative error existed so as to cause him any harm."[179]  Hazlip has not shown any error of constitutional dimension in this case.  He has not shown that his trial was so permeated with error that his conviction or sentence violates due process, or that the state court's conclusion denying this claim was objectively unreasonable.  Hazlip has not demonstrated that cumulative error warrants habeas corpus relief.  The respondent's motion for summary judgment dismissing this claim is granted.

---

[178]     Petition, Docket Entry No. 1, at 14-15; Brief in Support, Docket Entry No. 9, at 57-67.

[179]     Findings of Fact and Conclusions of Law, Docket Entry No. 20-22, at 86.

## IX. Conclusion and Order

The respondent's motion for summary judgment, (Docket Entry No. 21), is granted.  The federal habeas corpus petition filed by Rodney Keith Hazlip, (Docket Entry No. 1), is denied.  This case is dismissed with prejudice.  An order of final judgment be separately entered.

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to the petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  When the denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.  Hazlip fails to make these showings.  A certificate of appealability will not issue.

SIGNED on September 27, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief  United States District Judge